DAVIDGE, VAN CLEEF, JORDAN AND WOOD, INC., a Delaware corporation, and Van Cleef, Jordan and Wood, Inc., a New York corporation, Plaintiffs Below, Appellants,

v.

David H. BAKER, Jr., et al., Defendants Below, Appellees.

Supreme Court of Delaware.

March 22, 1972.

Richard I. G. Jones, of Prickett, Ward, Burt & Sanders, Wilmington, Max O. Truitt, Jr., Henry T. Rathbun, and Robert A. Warden, of Wilmer, Cutler & Pickering, Washington, D. C., for appellants.

Louis J. Finger, of Richards, Layton & Finger, Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

This is an appeal from the Superior Court which entered judgments on the complaint and the counterclaim for the defendants.

The plaintiffs are Davidge, Van Cleef, Jordan and Wood, Inc. (Davidge), an investment management corporation in Washington, D. C., and its wholly-owned subsidiary, Van Cleef, Jordan and Wood, Inc. (Van Cleef), an investment management corporation in New York. The defendants are David H. Baker, Jr., an individual, the 44 Wall Street Fund, Inc. (the Fund), a mutual fund, and Forty-Four Management, Inc. (Forty-Four), an investment management corporation.

On April 20, 1968, David H. Baker, Jr. entered into a contract of employment with Davidge under which he became an officer of Davidge and president of Van Cleef. The contract, by its terms, expired on December 31, 1969. The contract put Baker on an annual salary plus 15% of all fees collected by Van Cleef from all clients obtained as the result of Baker's efforts. The contract also provided that:

"Baker will not perform any services for any person or organization in the investment advisory field or otherwise engage in business competition with Davidge Corporation or its subsidiaries * * *."

Thereafter, Davidge authorized the organization of the Fund without any consideration having been given to the protection of the investment of aproximately $25,000 which the organization of the Fund would cost Van Cleef. When organized, the Fund entered into a management contract with Van Cleef. The management contract obligated Van Cleef to pay the expenses of organizing and registering the Fund.

At a meeting of the directors of Davidge on April 24, 1969, prior to the registration of the Fund, John Davidge, president of Davidge, expressed concern that if Baker did not renew his employment contract expiring December 31, 1969, he might cause the Fund to enter into a management contract with other than Van Cleef, which would mean a loss to Van Cleef of the money it had put into the organization of the Fund. The matter was discussed but no definitive agreement was reached, or so the Trial Judge held. We agree with this finding.

In September, 1969, Baker met with John Davidge and informed him that it would make no sense for him to continue with Van Cleef after the termination of his employment contract, and that he was interested in purchasing Van Cleef. Subsequent negotiations consumed several weeks and, on October 6, 1969, John Davidge informed Baker that Davidge was not interested in selling out to him, and that after October 10, 1969, Baker's services with Van Cleef and Davidge were terminated, but that Baker would continue to receive his salary until the end of his employment contract.

All of this was approved by the Davidge board. The result was that, while Baker continued to receive his salary, he was deprived of an office, secretarial help, access to investment information, etc., so that he was unable to solicit new clients or to service those clients he had brought into Van Cleef.

Meanwhile, the Fund had been registered on July 14, 1969 and went public on July 17. By October, the Fund had a total value of approximately $325,000. This amount produced gross commissions to its management company of something under $2,500 per annum. Approximately seven-eighths of the Fund's outstanding stock was held by Baker, members of his family and friends. Baker was president and a director of the Fund.

The annual meeting of the Fund was called to meet on October 24, 1969, pursuant to notice dated October 4, 1969. On the agenda for the meeting was approval

and ratification of the Van Cleef management contract. In a letter of October 13, 1969, John Davidge told Baker that he should promptly decide about the management of the Fund. The annual meeting of the Fund was held on October 24, 1960 and approved the entry into a management contract with Forty-Four, wholly controlled by Baker, "to become effective simultaneously with the termination of the management contract dated October 4, 1968, between this corporation and Van Cleef, Jordan & Wood, Inc." This lawsuit followed.

Davidge and Van Cleef seek to recover from the defendants the amounts expended by them in organizing the Fund, alleging that those amounts were thereafter unjustly appropriated by Baker to his own use. Judgment was entered for the defendants on the complaint. Baker counterclaimed for loss of salary and other damages, and judgment was entered for him for two months' salary.

First, Davidge argues that error was committed below when the Trial Judge held that Davidge, while continuing to pay Baker's salary, had nevertheless breached Baker's employment contract by denying him the opportunity to perform services for his clients and to earn money in the normal way contemplated by the contract.

By its terms, Baker's contract of employment is to be interpreted in accordance with the law of the District of Columbia. The pertinent section of the D.C.Code is § 29–919a which provides as follows:

"Any officer or agent elected or appointed by the board of directors may be removed by the board of directors whenever in its judgment the best interests of the corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed."

It is argued that § 29–919a, which is a codification of the general law, (see 19 Am.Jur.2d, Corporations, § 1105) is complete authorization to discharge Baker as long as his salary is continued, and that, accordingly, the Trial Judge was in error in finding that the action taken by Davidge was in breach of Baker's contract.

The argument, however, is based upon a misconception of what the Trial Judge actually held. Actually, the contract was construed as requiring Davidge not only to pay Baker a salary, but also to pay a commission of 15% of all fees derived from new clients brought to Van Cleef by Baker. By implication, therefore, Davidge and Van Cleef were bound to furnish Baker with the necessary facilities such as offices, a brokerage and research connection, secretarial services, etc. 2 Restatement of Agency 2nd, § 433.

The breach found by the Trial Judge was the refusal of Davidge and Van Cleef to permit Baker to service his clients and to bring in new ones. We think the Trial Judge was right in law and in fact, and will affirm his finding in this respect.

Second, Davidge argues that Baker, by organizing Forty-Four and causing it to become the investment manager of the Fund, was a violation of the noncompetition clause of his contract of employment.

As appears from the opening factual statement of this opinion, it was only after Baker learned that his employment was being terminated that he organized Forty-Four and arranged that the annual stockholders meeting of the Fund authorize a management contract with Forty-Four in lieu of Van Cleef.

Whether or not these facts justify a finding of such a complete breach on the part of Davidge as to justify the conclusion that the employment contract had become a nullity in all its terms is immaterial. This is for the reason that by letter dated October 13, 1969, Davidge expressly urged Baker to decide promptly as to whether he would take over the management of the Fund. The Trial Judge held this to be a waiver of the noncompetition provision of the contract. We agree that he was cor-

rect both in law and in the facts of this case.

Finally, Davidge argues that Baker has been unjustly enriched because he has appropriated to himself the expenses Van Cleef went to to organize the Fund. We think, however, such is not the fact. Under the Investment Company Act, the organizers of a fund always run the risk of having the shareholders reject a contract with the management company organized for that purpose. This, in effect, is what happened here. When Davidge got rid of Baker, the contract with Van Cleef was terminated and the organizing expenses became out-of-pocket to it. This was a risk Van Cleef assumed knowingly.

For the foregoing reasons, the judgment below is affirmed.